IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ALL-STAR TRAINING, LLC, and
REGINALD CARRICK,

Plaintiffs,

v. Case No. 1:26-cv-01114-JDB-jay

WORKFORCE INNOVATIONS, INC.,
and SOUTHWEST TENNESSEE
WORKFORCE DEVELOPMENT BOARD,

Defendants.

---

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
AND
DISMISSING CASE

---

*INTRODUCTION*

On July 9, 2026, the Plaintiffs, All-Star Training, LLC ("All-Star") and owner Reginald Carrick, filed an amended complaint against the Defendants, Workforce Innovations, Inc. ("WFI") and Southwest Tennessee Workforce Development Board (the "Board"), pursuant to 42 U.S.C. § 1983.[1] (Docket Entry ("D.E.") 10.) Before the Court is the motion of WFI to dismiss the amended pleading in accordance with Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (D.E. 12), to which Plaintiffs have responded (D.E. 13), and WFI has replied (D.E. 16). Also pending on the Court's docket is the Board's separate motion to dismiss under Rules 12(b)(1),

[1]This case was initially assigned to District Judge S. Thomas Anderson but was reassigned to the undersigned on June 10, 2026. (Docket Entry 7.)

12(b)(5),[2] and 12(b)(6) (D.E. 14), to which Plaintiffs have responded (D.E. 19), and the Board has replied (D.E. 20).

*FACTS ALLEGED*

The following facts are alleged in the amended complaint. All-Star is a Tennessee limited liability company, solely owned by Carrick, who is black, that provides workforce training in forklift certification to persons in the Greater Memphis Local Workforce Development Area (the "Greater Memphis Area") and the Southwest Tennessee Local Workforce Development Area ("Southwest LWDA"). The Defendant Board is the local workforce development board for the Southwest LWDA and encompasses Chester, Decatur, Hardeman, Hardin, Haywood, Henderson, Madison, and McNairy counties. WFI is a nonprofit that serves as the local fiscal agent for the Board. From 2023 to 2026, All-Star was approved and registered through the Tennessee Department of Labor & Workforce Development ("TDLWD") as an Eligible Training Provider ("ETP").

The Workforce Innovation and Opportunity Act, 29 U.S.C. § 3101, *et seq.* ("WIOA"), provides formula-funded grants to the states for adult, dislocated worker, and youth participants. Funds are allocated to each state by a statutory formula based on factors including unemployment rates, excess unemployment, and economically disadvantaged populations. The TDLWD is the operational state agency responsible for administering WIOA funds in coordination with the state's workforce development board. TDLWD maintains Tennessee's ETP list (the "ETPL" or the "List"), sets the criteria for inclusion and continued eligibility on the List, and is empowered to

---

[2]While the Board in its dispositive motion purports in the initial paragraph to seek dismissal based in part on Fed. R. Civ. P. 12(b)(5), it advises the Court in its reply that the reference to the rule was a scrivener's error. Accordingly, the Court will give the rule no further consideration here.

remove providers for failure to comply with applicable requirements. Until the alleged injury, All-Star was included on the ETPL.

Individual training accounts ("ITAs") are the principal funding mechanism for delivering occupational skills training to eligible participants. An ITA may be issued to an eligible participant following assessment and career counseling at an American Job Center and the participant uses the ITA to obtain training from an ETP on the List.

The WIOA requires local workforce development boards to identify in-demand occupations through labor market analysis and to correlate the number of ITAs to align with that demand. According to the West Tennessee Regional Plan (the "Regional Plan") for program years 2024-27, labor market analysis reflects that the category of Transportation and Material Moving Occupations, which includes forklift operators, is the largest occupation group in the region. Further, the Regional Plan notes that, in June 2023, forklift use was among the top-requested skills by employers. All-Star has at all relevant times been the only forklift training provider on the ETPL serving the Southwest LWDA. In 2025, over 100 students applied for training at All-Star. Prior to March 27, 2026, eleven had applied and, as of that date, over sixty were waitlisted. The only barrier for these students to obtain training was access to funding.

Plaintiffs had at all times operated in the Greater Memphis Area without an ITA cap on enrollment. Beginning in 2024, however, Defendants imposed, maintained, and enforced a combined youth and adult student cap of nine ITAs per program year, which runs from July 1 through June 30, on forklift training in the Southwest LWDA. The decision to impose a cap on the number of ITAs available for forklift training in the Southwest LWDA is implemented through WFI.

On March 8, 2024, Jennifer Bane, executive director of WFI, wrote to All-Star that, "our scholarship enrollments are limited each program year to the number of expected new job openings." (D.E. 10 ¶ 66.) Applying the limit then in force, Bane added that, because "our labor market information shows a growth of seven new forklift operator jobs per year" and "we have already funded three in the current program year for a previous class, these additional four students are all that we can fund at this time." (*Id.* (cleaned up).)

The cap continued to be enforced, requiring All-Star to turn away qualified applicants for lack of ITA funding. Plaintiffs complain that the nine-ITA cap is not justified based on labor market data and that it is intended to target the only forklift training program in the region—black-owned All-Star. White-owned ETPs providing driving training in Transportation and Material Moving Occupations within the Southwest LWDA are not subject to comparable caps.

Each listed ETP program, including All-Star, is subject to recurring review and renewal, which includes performance reporting and onsite monitoring visits. All-Star's approval lapsed on February 21, 2026. Soon thereafter, it sought reinstatement to the ETPL. On February 23, 2026, Jay Baker, assistant commissioner of the TDLWD, responded to the reinstatement request and forwarded it to Kiara Fisher, ETPL coordinator for the Greater Memphis Local Workforce Development Board, regarding "renewing [All-Star's] training program on the ETPL." (*Id.* ¶ 82.) In correspondence dated between February 24 and March 17, 2026, Fisher advised that "the Workforce Board has not made a decision at this time, as the program has not yet been formally reviewed this program year"; that "all programs, along with all ITA contracts, are undergoing a comprehensive review process"; and that "prior to any renewal decision, we will conduct an in-person monitoring visit at All[-]Star to evaluate overall program performance." (*Id.* ¶ 83 (cleaned up).).

On April 9, 2026, Fisher sent All-Star official notification of a scheduled on-site visit stating that staff would "be onsite to conduct your annual review in accordance with [WIOA] requirements." (*Id.* ¶ 85.) On April 13, 2026, the monitoring visit had been completed. At the time the amended pleading was filed, All-Star's training program had not yet been restored to the ETPL and no determination denying reinstatement had been made or communicated. The amended complaint alleges that, on information and belief, based on communications Plaintiffs received, All-Star "will be restored to the ETPL on or about July 15, 2026." (*Id.* ¶ 86.)

Plaintiffs seek nominal, compensatory, and punitive damages; declaratory relief in the form of an order that the ITA cap amounts to unconstitutional discrimination on the basis of race; and injunctive relief prohibiting continued imposition, maintenance, or enforcement of the cap.

*STANDARDS OF REVIEW*

<u>Fed. R. Civ. P. 12(b)(1).</u>

Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2; *Summit Locations, LLC v. Bd. of Tr., Bath Twp., Ohio*, 190 F.4th 486, 491 (6th Cir. 2026). Accordingly, "a plaintiff seeking to invoke [federal] jurisdiction must have a 'personal stake in the case—in other words, standing.'" *American Ass'n of Nurse Anesthesiology v. Kennedy*, 183 F.4th 427, 432 (6th Cir. 2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

A plaintiff must establish standing "before a court can consider the merits of its claims," *Mackinac Ctr. for Pub. Pol'y v. United States Dep't of Educ.*, 175 F.4th 692, 700 (6th Cir. 2026). That is, it must "clearly allege facts demonstrating a 'plausible claim' that it has standing." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The plaintiff must demonstrate that

"(1) [it] suffered an injury in fact," "(2) the injury is fairly traceable to conduct of" the defendant, and "(3) the court's powers of decision would provide [it] redress." *Doe v. Lee*, 102 F.4th 330, 335 (6th Cir.) (cleaned up), *reh'g en banc denied*, 2024 WL 3819075 (6th Cir. Aug. 13, 2024). If the plaintiff fails to establish standing to bring its claim, the action must be dismissed for lack of subject-matter jurisdiction. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 842 (6th Cir. 2024).

Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts "sufficient to raise a right to relief above the speculative level." *Adams v. Lexington-Fayette Urban Cnty. Gov't*, 154 F.4th 501, 507 (6th Cir. 2025) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). The district court must "construe the complaint in the light most favorable to the plaintiff." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)). It is not, however, required to consider naked, "conclusory allegations or legal conclusions masquerading as factual allegations." *Beard v. Bajco Int'l, LLC*, 820 F. Supp. 3d 706, 711 (N.D. Ohio 2026) (citing *Eidson v. State of Tenn. Dep't of Child.'s Servs.*, 510 F.3d

631, 634 (6th Cir. 2007)) (cleaned up); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

The pending motions to dismiss are substantially similar, both asserting (1) that Plaintiffs lack standing to bring this action and (2) that their claims are time-barred. Therefore, the motions will be considered together.

Section 1983 Generally.

The statute provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff's complaint must allege that "(1) the conduct in controversy was committed by a person acting under color of law" and "(2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *Westside Mothers v. Olszewski*, 454 F.3d 532, 543-44 (6th Cir. 2006) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)).

The federal right identified by the Plaintiffs here is the Fourteenth Amendment's Equal Protection Clause, which provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

Standing.

In attacking Plaintiffs' standing to bring the instant action, Defendants focus solely on the third element—redressability. "[R]edressability means that the court can remedy the injury." *Mackinac Ctr. for Pub. Pol'y*, 175 F.4th at 700 (citing *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025)). It requires that it is "likely, as opposed to merely speculative, that a

judgment will remedy the plaintiff's injury." *Kennedy*, 183 F.4th at 435 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

As explained *supra*, the Court must determine whether Plaintiffs possess standing to bring this case prior to analyzing the merits. "In essence, standing concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct was occurring at the time the complaint was filed." *Patton v. Fitzhugh*, 131 F.4th 383, 391 (6th Cir.) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001)) (internal quotation marks omitted), *cert. denied*, 146 S. Ct. 821 (2025). Therefore, "[s]tanding . . . is to be determined as of the time the complaint is filed." *Nessel*, 117 F.4th at 849 (quoting *Ohio v. Yellen*, 53 F.4th 983, 994 (6th Cir. 2022)). "[I]f a plaintiff possesses standing from the start, later factual changes cannot deprive the plaintiff of standing." *Patton*, 131 F.4th at 392 (quoting *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 295 (6th Cir. 2023)). "[W]hen a plaintiff has filed an amended complaint, standing is measured by when the plaintiff initiated the suit, but as explained by allegations in the operative complaint." *Id.* (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004)).

Defendants maintain that the "promise" made by the Plaintiffs in their amended pleading that their ETPL approval would be restored on or about July 15, 2026, never actually came true, as the Greater Memphis Workforce Development Board did not reinstate All-Star, a fact the Plaintiffs acknowledge. Due to this post-amended complaint determination, Defendants insist, there is no order this Court could enter that would redress Plaintiffs' alleged injury.

However, based on the above-cited caselaw, the date by which Plaintiffs' standing to bring this action must be measured is May 22, 2026, the date the initial complaint was filed. *See id.* Plaintiffs allege in their amended pleading that, at the time the suit was brought, the "reinstatement request was pending and under active review." (D.E. 10 ¶ 84.) At that time, the injunctive and

declaratory relief Plaintiffs seek—an order finding the ITA cap unconstitutional and halting its enforcement—would have redressed the injury. An award of damages for losses incurred by Plaintiffs because of the imposition of the allegedly discriminatory cap would also likely have redressed the claimed injury.

It therefore appears to the Court that Defendants' argument regarding standing must fail since, as of May 22, 2026, Plaintiffs had sufficiently alleged redressability.[3]

Statute of Limitations.

Having determined that it has subject-matter jurisdiction over this action, the Court now turns to Defendants' second argument—that the suit is barred by the statute of limitations. A Rule 12(b)(6) motion is generally not an appropriate vehicle for dismissing a claim based on the statute of limitations, but dismissal is warranted under the rule if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). As the statute of limitations is an affirmative defense, the burden rests on the shoulders of the defendant to show that the period has expired. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). If the defendant meets this requirement, the burden shifts to the plaintiff to establish an exception to the statute of limitations. *Id.*

Section 1983 does not have its own statute of limitations. Rather, it "incorporates the most analogous state-law limitations period." *Abbey v. Metro. Gov't of Nashville & Davidson Cnty.*,

---

[3]As Plaintiffs point out in their response, what Defendants may actually be arguing here is mootness. "[W]hen a case at first presents a question concretely affecting the rights of the parties, but—as a result of events during the pendency of the litigation—the court's decision would lack any practical effect, the case is moot." *Patton*, 131 F.4th at 392 (quoting *Ohio v. US EPA*, 969 F.3d 306, 308 (6th Cir. 2020)). However, "[t]he party claiming mootness bears the burden of showing that the doctrine applies." *Dyda v. Michigan Sec'y of State*, 184 F.4th 460, 469 (6th Cir. 2026). Considering that Defendants have neither raised nor established mootness, the Court declines to wade into that issue.

*Tenn.*, 182 F.4th 496, 500 (6th Cir. 2026), *pet. for cert. docketed* (U.S. Oct. 29, 2026) (No. 26-571). It is undisputed that the one-year statute of limitations set forth in Tennessee Code Annotated § 28-3-104(a)(1)(B) applies to § 1983 claims. *Infinium Builders LLC v. Metro. Gov't of Nashville & Davidson Cnty.*, 803 F. Supp. 3d 639, 660 (M.D. Tenn. 2025). The parties do not agree, however, on when Plaintiffs' claim accrued.

While statutes of limitation are to be determined by state law, federal law governs when a § 1983 action accrues. *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam). The "standard accrual rule" starts the clock "when the plaintiff has a complete and present cause of action." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)) (cleaned up). That is, "the limitations period [commences] on the first day that every element of a claim has occurred such that the plaintiff may sue in court over the claim." *Id* The district court's inquiry in a § 1983 case is to focus on "what event should have alerted the typical lay person to protect his or her rights." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997); *see also Smith v. Dunn*, No. 3:25-CV-59-TAV-DCP, 2026 WL 2687009, at *12 (M.D. Tenn. Sept. 14, 2026) (citing *Kuhnle*).

Defendants argue that Plaintiffs' claims accrued in 2024, when they became aware of the decision to impose the ITA cap for forklift training. While Plaintiffs do not appear to challenge that assertion, they submit that an exception to the statute of limitations—the continuing violation doctrine—extends the one-year period.

The doctrine may be utilized to delay accrual of a cause of action. *Brown v. Louisville-Jefferson Cnty. Metro. Gov't*, 135 F.4th 1022, 1034 (6th Cir. 2025). The statutes of limitation exist to keep stale claims out of the courts, but the staleness concern is alleviated where the challenged violations continue. *Morgan v. Trierweiler*, 67 F.4th 362, 369 (6th Cir. 2023). The

doctrine has been held to provide that "violations which occur beyond the limitations period are actionable where a plaintiff challenges not just one incident of unlawful conduct but an unlawful practice that continues into the limitations period." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) (internal quotation marks omitted). The Sixth Circuit has noted that it "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003); *see also Slorp*, 587 F. App'x at 257 ("Courts have been 'extremely reluctant' to extend the continuing[]violation doctrine beyond the context of Title VII."); *Smith*, 2026 WL 2687009, at *15 (citing *Sharpe*).

Plaintiffs contend that their suit is timely because Defendants apply the ITA cap to a new stream of referrals every program year and each refusal is in itself an act of discrimination. However, the continuing violation doctrine "is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Koeberer v. Weir*, ___ F.4th ___, 2026 WL 2874475, at *3 (6th Cir. Sept. 24, 2026) (quoting *Eidson*, 510 F.3d at 635). A claim that a defendant discriminates anew each time it—in this case—applies the ITA cap every program year is "just another way of targeting the ongoing effects of [a defendant's] allegedly discriminatory actions." *Straser v. City of Athens, Tenn.*, 951 F.3d 424, 427 (6th Cir. 2020). Because such activities are ongoing effects rather than continuing violations, Plaintiffs have failed to establish that the continuing violation doctrine extends the one-year statute of limitations applicable to this action. As the statutory period expired in 2025, this suit, initiated in 2026, is untimely.

*CONCLUSION*

Based on the foregoing, the Defendants' motions to dismiss are GRANTED and this matter is DISMISSED in its entirety. Judgment shall enter.

IT IS SO ORDERED this 5th day of November 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE